12173

TROY v. JOHNSON *ET AL.*

(137 S. E., 343)

APPEAL AND ERROR—APPELLANT IN EQUITY CASE HAS BURDEN OF PROVING CIRCUIT COURT'S FINDING IS AGAINST PREPONDERANCE OF EVIDENCE.—In equity case appellant has burden of satisfying Supreme Court that finding of circuit Court is against the preponderance of the evidence.

Before TOWNSEND, J., Richland, May, 1925. Affirmed.

Suit by Kate C. Troy, by Robert E. Plumer, her next friend, against Ruth Davis Johnson and another. Decree for defendants, and plaintiff appeals. Affirmed.

The report of the master and the decree of Judge Townsend is as follows:

MASTER'S REPORT

To the Presiding Judge of the Court of Common Pleas for Richland County:

The above-stated case was referred to me, " to take the testimony upon the issues arising under the pleadings herein, and to report the same, together with his conclusions of law and fact therein, with leave to report any special matter." Pursuant to this order, I have held several references attended by the attorneys for the parties, and have taken the

testimony which is herewith handed to the Court. From the testimony of the case as taken before me, I find, as matters of fact, the following:

(1) The plaintiff, Kate C. Troy, has lived for a long period of time in the property at the northeast corner of Taylor and Henderson streets, in the city of Columbia. The original lot as owned by her measured 154.2 feet on Taylor street with a depth along Henderson street of 210.5 feet. Near the corner of Taylor and Henderson streets is a two-story house, occupied by plaintiff as a residence; and next east of it, fronting on Taylor street, is a small dwelling house which has been occupied by the defendants, Ruth Davis Johnson and L. B. Johnson.

(2) That said Kate C. Troy and her brother, James F. Troy, lived together in the dwelling house at the corner for many years, and until the death in 1918 of the said James F. Troy. Since that time, and up to the present time, Kate C. Troy has lived alone in said dwelling, in so far as any relatives or friends are concerned, but has rented out two apartments therein to tenants.

(3) That Kate C. Troy is now 70 years of age or older, and her health, while not robust, is apparently fair for a person of her age. She still keeps house for herself and looks after her private business affairs.

(4) On January 14, 1920, Kate C. Troy, after consultation with R. E. Plumer, one of her nearest relatives and her next friend in this suit, sold to the defendant Ruth Davis Johnson the eastern portion of her residence lot, fronting 50 feet on Taylor street and its northern boundary and 145 feet on its eastern and western lines. On this lot was a small dwelling house, which had been occupied by Mr. and Mrs. Johnson as tenants of Miss Troy. The consideration for this sale was $3,600.

(5) Deed to this lot was drawn in the office of D. W. Robinson, Esq., an attorney in Columbia, and was signed by the said plaintiff on 14th of January in the presence of

Elizabeth C. Killian, a clerk in the office of Mr. Robinson, and D. W. Robinson, Sr., himself, and was probated by Elizabeth C. Killian, before D. W. Robinson, Sr., as notary public. This deed is recorded in Book BX of Deeds, at page 576. At the time of its delivery, $1,000 was paid to Miss Troy by the defendants.

(6) At the same time and place, a bond and mortgage was drawn from R. D. Johnson to Kate C. Troy, conditioned for the payment of $2,600, three years after date, with interest at 7 per cent., payable semiannually, with the right to the mortgagor to pay the entire sum after one year, the mortgage covering lot that the deed conveyed to Ruth Davis Johnson and secured the bond above described. This mortgage was recorded in Book DM of Mortgages, at page 238.

(7) On January 5, 1923, at or about the maturity of the first mortgage, the defendants, with the plaintiff, Kate C. Troy, went to the office of D. W. Robinson, and executed a new bond and mortgage, drawn by D. W. Robinson, Jr., a son of D. W. Robinson, Sr., and himself a lawyer, for $2,400, payable three years after date, with interest at 7 per cent., payable semiannually, with the privilege of paying a sum, not less than $200, on any interest date, by giving 30 days' notice in writing of such intention. This bond was signed by Ruth Davis Johnson in the presence of D. W. Robinson, Jr., and the mortgage was signed by her in the presence of L. B. Johnson and D. W. Robinson, Jr., and probated by L. B. Johnson before D. W. Robinson, Jr., notary public. This mortgage is of record in Book EB of Mortgages, at page 188.

(8) On this same date, 5th of January, 1923, a check was given to Kate C. Troy for $200, on the principal, and the defendants claim to have paid her at the same time $91 in cash, interest to that date.

(9) On this same date, January 5, 1923, Kate C. Troy, with D. W. Robinson, went to the clerk's office, and D. W.

Robinson, Jr., wrote out a satisfaction of said mortgage on the record in that office and Miss Troy signed it, the same being attested by the clerk of Court. The original bond and mortgage were at that time delivered to the defendants.

(10) Between January 5, 1923, and September 10, 1923, the defendants claim to have made payments on this indebtedness as follows:

| | |
|---|---:|
| March 1, 1923 | $  200.00 |
| April 14, 1923 | 300.00 |
| June 9, 1923 | 300.00 |
| July 5, 1923 | 200.00 |
| September 10, 1923 | 700.00 |
| | $1,700.00 |

In addition, they claim to have paid, on July 5, 1923, interest, $84. All of these payments, they claim, were made in cash, with the exception of $200 payment on July 5, 1923, which was made by a check. I will refer to these payments in a later finding.

(11) On September 10, 1923, the defendants, with Miss Troy, went to the office of D. W. Robinson, and had a new mortgage drawn for $700, the balance due on the $2,400 mortgage, after crediting the $1,700 payments above set forth. This bond and mortgage was drawn by D. W. Robinson, Jr., the bond signed by Ruth Davis Johnson in the presence of D. W. Robinson, Jr., and the mortgage signed by her in the presence of L. B. Johnson and D. W. Robinson, Jr., and probated by L. B. Johnson before D. W. Robinson, Jr., notary public. This mortgage is recorded in Book EK of Mortgages, page 136.

(12) On the same date, September 10, 1923, D. W. Robinson, Jr., with Miss Troy, went to the clerk's office, and wrote a satisfaction on the original record in that office, of the $2,400 mortgage, which satisfaction was signed by Miss Troy and attested by the clerk of Court. The original

bond and mortgage were at that time turned over to the defendants.

(13) The defendants claim that on January 14, 1924, they paid to Miss Troy $700, the balance of principal due, and $49 interest, in cash. On that date Miss Troy, with Mr. and Mrs. Johnson, went to the clerk's office and there produced the original bond and mortgage for $700; and C. E. Hinnant, clerk of Court for Richland county, wrote on the record of said mortgage a satisfaction thereof, which was signed by Miss Troy in his presence; and he also indorsed on the original bond and mortgage, "Paid in full, January 14, 1924," which was signed in his presence by Miss Troy, and the said original papers were then delivered to the defendants.

(14) On January 15, 1924, Miss Troy, with Mr. and Mrs. Johnson, went to the office of D. W. Robinson and there had drawn by D. W. Robinson, Jr., deed from Miss Troy to Ruth Davis Johnson, a strip of land with a frontage of 18 feet on Taylor street, and a depth of 145 feet, bounded south by Taylor street, west by other lands of the grantor, north by other lands of the grantor, and east by property conveyed by the grantor to the grantee. This deed was signed by Kate C. Troy, in the presence of Mrs. Camilla C. Miller, a stenographer and clerk in the office of D. W. Robinson, and D. W. Robinson, Jr., and probated by Camilla C. Miller before D. W. Robinson, Jr., notary public. The deed recites a consideration of $5, and has attached $1 revenue stamps, of both state and federal. This deed was recorded January 17, 1924, in Book CM of Deeds, page 138.

The consideration of this deed, as testified to by the Johnsons, and as to which there is no contradiction, was $500. Of this amount, the Johnsons claim to have paid $200 in cash. From the testimony of D. W. Robinson, Jr., it appears that Miss Troy, at the time, in response to a question from him, stated that he need not draw a mort-

gage, that she had made satisfactory financial arrangements
with the Johnsons.

(15) On March 1, 1924, Kate C. Troy, and Mr. and
Mrs. Johnson, went to the office of D. W. Robinson, and
there had drawn by D. W. Robinson, Jr., a deed to a strip,
fronting 8 feet on Taylor street, with a depth of 145 feet,
bounded west and north by other lands of the grantor, east
by the 18-foot strip conveyed by Kate C. Troy to Ruth
Davis Johnson, and south by Taylor street. This deed was
signed in the presence of L. B. Johnson and D. W. Robin-
son, Jr., and probated by L. B. Johnson, before D. W. Rob-
inson, Jr., notary public. This deed was recorded March
3, 1924, in Book CM at page 490.

When the parties went to the office of Mr. Robinson to
have this deed drawn, Miss Troy, being in doubt as to how
close to her residence the line would run, D. W. Robinson,
Jr., with Miss Troy and the defendants, went out to the
premises, stepped off the strip in the presence of all the
parties, and then returned to his office and drew the deed
and had the same executed.

The consideration which the Johnsons claim was agreed
upon for this strip was $200, as to which there is no con-
tradiction. This consideration was not paid at the time and
is still due.

(16) Prior to the death of James F. Troy, Miss Troy
had had a limited experience in business affairs, and her
brother attended to most of her business for her. After
his death in 1918, she looked after her own affairs, some-
times after consultation with R. E. Plumer, her relative,
and at other times without consulting anyone. She rented
her rooms, collected rents therefrom, paid her light, gas,
and electric bills herself; bought and prepared her own
food; bought her clothes, seeking the advice at different
times of her cousin, Miss Plumer, and Mrs. Ruth Davis
Johnson; kept a private post office box for her mail; paid
her own taxes and paving assessments; and as her own idea,

took out perpetual care on two lots in Elmwood Cemetery, held by her. In addition, she had some experience in collecting interest on a mortgage given to her by John A. Davis, Jr., and on the Johnson mortgages; and at different times, after her brother's death, accepted, satisfied and released mortgages, and executed deeds—the one here in question and the one to J. A. Davis, Jr.

(17) The plaintiff, Kate C. Troy, at the beginning of her transactions with the defendants, in January, 1920, was of sufficient mind and understanding to transact business. The said Kate C. Troy, in her transactions with the defendants, had no attorney of her own. The Johnsons testified that at the time of the first transaction, she was asked if she wanted her own attorney to pass on the papers, and she stated that she was satisfied to have Mr. Robinson do this All of the deeds and mortgages that passed between the parties were drawn in the office of D. W. Robinson, Sr., by himself or his son, D. W. Robinson, Jr., and Miss Troy and the defendants were present when such papers were drawn and executed.

From the testimony, the mental condition of Miss Troy has become gradually weaker since 1920. The testimony as to her condition in July and August, 1924, after the suit was brought, was to the effect that she had the mind of a child, and she was not of sufficient mental capacity to attend to business. The appearance of Miss Troy on the stand was confusing; she showed a lack of memory and understanding on some points, while on others she seemed to have a clear memory. I find it impossible to take her testimony as conclusive either way. The plaintiff relies on her showing of mental weakness and lack of memory on some points and relies on the accuracy of her memory on other points. I find it therefore necessary to rely more on the circumstances of the case, and other testimony, to get the true measure of her mental ability at the time of her various transactions with the Johnsons.

(19) I find that Kate C. Troy knew what she was doing and was capable of understanding the significance of her acts when she: (a) Signed the deed to Ruth Davis Johnson on January 14, 1920; (b) satisfied the mortgage on January 5, 1923, and accepted a new mortgage for $2,400 from Ruth Davis Johnson; (c) satisfied the mortgage on September 10, 1923, and accepted a new mortgage from Ruth Davis Johnson for $700; (d) satisfied mortgage for $700 on January 14, 1924; (e) executed deed to the 18-foot strip to Ruth Davis Johnson January 15, 1924; and (f) executed deed to the 8-foot strip to Ruth Davis Johnson on March 1, 1924.

(19) I find that the Johnsons lived next door to Miss Troy for a number of years, first as tenants, and then as owners of the premises; that they showed her during this period minor attentions, such as carrying her meals when sick, and possibly at other times, taking her on occasional automobile rides for pleasure, and at other times on shopping trips, sometimes at the request of Miss Troy; that the testimony does not convince me that such attentions were anything more than would be due by one neighbor to another, not so numerous or overwhelming as to warrant the conclusion either that they were done for the purpose of obtaining an undue influence over Miss Troy, or that they were sufficient to accomplish that purpose. There was no blood relationship between Miss Troy and the defendants, and there was no fiduciary relation between them.

(20) The defendants can produce no receipts for payments claimed to have been made by them to Miss Troy, other than the following:

January 14, 1921, receipt for $91, interest on bond and mortgage.

January 14, 1922, receipt for $91, interest on bond and mortgage.

July 15, 1922, check of Mrs. L. B. Johnson, $91.

January 5, 1923, check of Mrs. L. B. Johnson, $200.

July 5, 1923, check of Mrs. L. B. Johnson, for $200.

Also the payment of $1,000 on January 14, 1920, which payment is admitted.

The explanation given by the defendants is that they had receipts for payments made, but after the satisfied mortgages were turned over to them, they thought the receipts for part payments thereon were of no further value, and either destroyed them or allowed them to get lost.

They testified that Miss Troy had requested at different times that payments be made to her in cash, rather than by checks, and Miss Troy herself testified that she always cashed checks which were given to her.

As opposed to the claim of payment, we have no positive testimony, and only the inference to be drawn from the lack of receipts for payments claimed to have been made in cash. Miss Troy herself admitted that the Johnsons "had made some payments, but she did not remember how much."

As corroboration of the payments claimed, there are the following facts: Miss Troy herself admitted that she cashed checks which were given her. The testimony is that she paid all accounts, taxes, and paving assessments in cash, and her own bank accounts bear out this fact. That the defendant, L. B. Johnson, in the period from November 3, 1922, to February 9, 1924, received payments for his services by checks which are in evidence, and which he cashed without depositing, totaling $3,622.42. In this same period he received other checks which are in evidence, and which he deposited, $3,777.63. These payments were from two sources alone, the General Grievance Committee of the Brotherhood of Locomotive Firemen and Enginemen, and the Brotherhood of Locomotive Firemen and Enginemen; whereas, he received payments from other sources amounting to several hundred dollars, which I have not enumerated. From this it appears that the Johnsons were able to make the payments claimed to have been made.

In this same period the Johnsons bought no other prop-

erty except an automobile, which cost $1,200. Meantime, Mrs. Johnson was doing her own housework.

In addition, the evidence shows that Miss Troy, in this period, deposited in her bank account the $1,000 payment of January 14, 1920, the $200 payment of January 5, 1923, and cashed a check for $200 given by the Johnsons July 5, 1923. On September 10, 1923, when the Johnsons claim to have paid her $700 in cash, she deposited $390 in the bank, and paid the Elmwood Cemetery Company $100 in cash. She had previously paid Elmwood Cemetery Company $200 in cash on July 18, 1923. She paid for the years 1920 to 1923, inclusive, taxes and paving assessments amounting to $1,263.95 in cash, and of this amount, $136.20 state and county taxes for 1923 was paid on January 14, 1924, when the Johnsons claim to have paid her $700 in cash.

As suggested by counsel for the defendants, there is no showing of what amount Miss Troy still has in her possession, as she has shown at all times a disposition to keep her business affairs to herself. She keeps her valuable papers in a locked drawer in her apartment, which she also keeps locked at all times. The testimony as to the payment is very positive by both L. B. Johnson and his wife, Ruth Davis Johnson, who state that they were both present whenever payments were made.

From these facts and circumstances I cannot say that the amounts claimed to have been paid have not been paid. There is sufficient proof, uncontradicted, of substantial amounts which Miss Troy has had and spent, the source of which have not been explained, to convince me that payments have been made by the Johnsons, and in substantial amounts. I therefore conclude that their positive testimony of full payment must prevail, and so hold.

(21) It is admitted by the defendants that there is still due on the purchase price of the 18-foot strip, and the 8-foot strip, a balance of $500. I therefore find that the defendants are due the plaintiff on this account the sum of

$500, with interest at 7 per cent, on $300 from January 15, 1924, and on $200 from March 1, 1924.

(22) The purchase price of the 18-foot and 8-foot strips, as testified to by the Johnsons, was agreed to be $700. I have heretofore found that Miss Troy was sufficiently in possession of her faculties, at the time of her execution of these deeds, to know what she was doing and to know the consequences thereof. This being so, it is to be presumed that the price agreed upon was a price agreeable to her at the time. There is evidence here that land on this block was worth from $65 to $75 a front foot. This might be so as to a full size lot. In this case, the lot sold was an inside strip, more valuable to the Johnsons and to Miss Troy than to any one else; and, in fact, unsalable to any outside party. Its sale to Mrs. Johnson meant that she would erect a dwelling house next to the Troy home, which was understood by Miss Troy. Also, the sale of this strip left Miss Troy with a frontage of 78 feet, for her home lot on the corner, as well as a large lot in the rear, fronting on Henderson street.

I do not think that under the circumstances the price agreed upon was so shockingly inadequate as to warrant the intervention of this Court, and I therefore hold that the conveyances of the 18-foot strip and the 8-foot strip are valid and binding deeds at the sale price of $700.

(23) The allegation of the complaint that the conveyance of these strips was procured by undue influence and the threat of a sale of the first lot purchased to negroes is not sustained by the testimony.

As matter of law, I find:

(A) That there was no such undue influence or deception or fraud practiced on Miss Troy by the defendants in the execution of the various deeds and mortgages, and satisfaction of mortgages by her in this case, to warrant this Court in setting aside such transactions, or any of them.

As I understand the general principal of law, in order to

set aside a solemn instrument for undue influence, deception, or fraud, there must be shown such an influence exerted upon the grantor or maker of such instrument, as to over-bear her will, and to make the act of execution, not the carrying out of a real purpose or intention of the signer, but the mere mechanical performance by her of the wish and design of some other person.   And it must be shown that this influence was exerted upon the signer at the moment of signing.

On this point the testimony of D. W. Robinson, Jr., is to me conclusive in addition to other testimony.   He states positively that when these papers were drawn Miss Troy participated in the discussion as to the details of such papers; that they were read over to her after they were prepared; that she was fully advised as to what she was signing; and that in his opinion she was fully competent to sign the same.

(B)  And as to the mental capacity of Miss Troy, I have found as a matter of fact that when she executed the various instruments in controversy, she was mentally capable of understanding what she was doing and the effect of such instruments.

The general rule is that in order to set aside an instrument on account of the mental incapacity of the signer, it must appear that the signer, at the time of signing, was unable to understand or comprehend the subject of the contract or act, and its nature and probable consequences.   The test is, not whether the maker's mental powers were impaired, but whether, at the time of the execution of the instrument, she had sufficient capacity to understand in a reasonable manner the nature and effect of her act.   Mere infirmity of mind and body will not render a person incapable of executing a valid deed or contract.

I find, as a matter of law, that the mental capacity of Miss Troy, at the time of the execution of the various instruments in this action, was such as to enable her to understand

the nature and effect of her acts in signing same, and that she is now bound thereby.

Reference is again had to the testimony of D. W. Robinson, Jr., as to Miss Troy's mental state at the time of signing these various instruments; to the testimony of C. E. Hinnant, clerk of Court, who prepared the satisfaction of mortgage on January 14, 1924, which was signed by Miss Troy; the fact that on December 31, 1923, Miss Troy had executed an extension of a mortgage from John A. Davis, Jr., and had signed a satisfaction of an old mortgage for him under the advice of her attorneys, Melton & Belser, who also represented her in this action, and who must certainly have felt at the time that she was capable of transacting business of that nature.

As special matter:

I recommend that a lien for the balance due on the purchase price of the 18 and 8 foot strips be created on said lands, to the amount of the balance due, to wit: $530.23; $300 with interest at 7 per cent. from January 15, 1924, and $200 with interest at 7 per cent. from March 1, 1924, and according to the following statement:

| | |
|---|---|
| Principal .................................. | $300.00 |
| Inerest from January 15, 1925, 7% ........... | 19.00 |
| Principal .................................. | 200.00 |
| Interest from March 1, 1924, 7% ............. | 10.00 |

That the defendants be given a period of 30 days after the final decree in this cause within which to pay such amount into Court for the plaintiff; and that upon default in said payment, that said 18 and 8 foot strips be sold by the master at public outcry to satisfy said lien.

All of which is respectfully submitted.

J. C. TOWNSEND,

Master for Richland County.

November 26, 1924.

### JUDGE TOWNSEND'S DECREE

The case thereafter came on for hearing before Judge W. H. Townsend, Judge of the Fifth Judicial Circuit, at Chambers. At this hearing Judge Townsend had Miss Troy brought before him in person and examined her of his own account as to her mental condition. Judge Townsend thereafter made the following decree, which was filed on May 2, 1925:

This case was heard by me upon exceptions to the master's report. Two main issues were presented.

The first: Whether or not the deeds executed by Miss Troy to Mrs. Johnson dated January 15, 1924, in consideration of $500 conveying an 18-foot strip of land, and dated March 1, 1924, in consideration of $200, conveying an adjoining 8-foot strip, were fraudulently obtained by defendants from Miss Troy for an inadequate consideration.

Miss Troy was of very weak mental capacity when she made these deeds, in a condition in which defendants might easily have induced her to make a disadvantageous trade. But the deeds were prepared by Mr. D. W. Robinson, Jr., after a full conference with Miss Troy and his visiting the lot with her to see the lines. If the defendants had contemplated a fraud, they would not have run the risk of having Mr. Robinson discover it in his conference with Miss Troy. The small strips of land were only desirable to enlarge Mrs. Johnson's lot previously purchased, and to adjust the boundaries between it and the lot of Miss Troy. The estimates of the real estate agents as to foot values were based on building lots, and the considerations stated are not so clearly inadequate as to indicate either fraud or undue influence. I therefore answer this first question in the negative.

The second issue is: Have the debts secured by the mortgages given to Miss Troy by Mrs. Johnson, and dated January 14, 1920, January 5, 1923, and September 10, 1923, been paid? Both defendants testify positively to the particular payments, how the funds to make them were procured.

and produce the mortgages formally satisfied by Miss Troy in the presence of Mr. Robinson, or of the clerk of Court. Miss Troy is in such weak mental condition she can only say she does not remember the payments, nor any use made of the money. The defendants claim the disputed payments were made in cash at the special desire or request of Miss Troy, and that they took receipts which they lost after receiving back the satisfied mortgages. These circumstances raise suspicions. But payment even to a weak-minded woman need only be proven by a preponderance of the evidence, not beyond a reasonable doubt. Throwing away partial receipts after a full satisfaction is not uncommon. The weight of the evidence, and the presumption of innocence alike sustain the master's findings.

It is therefore ordered, adjudged, and decreed that the exceptions to the master's report be, and hereby are, overruled, and said report confirmed and made the judgment of the Court.

It is further ordered that the plaintiff, Kate C. Troy, have judgment against the defendant Ruth Davis Johnson for the sum of $328.88, balance of purchase money due on the 18-foot strip of land; and also for the further sum of $216.32, balance of purchase money due on the 8-foot strip of land.

It is further ordered that the cancellation of the deeds and satisfaction of mortgages prayed for the complaint, and the foreclosure of said mortgages, be refused.

*Messrs. Melton & Belser,* for appellant, cite: *Non Compos Mentis not necessary to avoid contract:* Storey's Eq. J., Vol. 1, 14th Ed., S. 329, P. 319; S 337, P. 325. *Mental weakness and inadequacy consideration sufficient:* 875 C. C., 5; 94 U. S., 506; 2 Mason, 378; 30 S. C., 473; 24 S. C., 1; 57 S. C., 413; Pom. Eq. S., 957, 946; I Story Eq., 238. *Inadequacy presumption undue advantage taken:* 4 Des., 697; 3 Id., 273; 90 S. C., 196.. *Burden proof on beneficiary:* Pom. Eq. J., Vol. 2, 4th Ed., P. 2013-17; Storey's Eq. J.,

Vol. 1, 14th Ed., S. 320, P. 312. *Party to deed incompetent witness:* 8 R. C. L., 942; 106 S. C., 410; 1 R. C. L., 270; 87 A. S. R., 536; 86 N. W., 503; 80 N. W., 772; 46 L. R. A., 721; 67 N. E., 729; 62 L. R. A., 790. *Consideration with knowledge of weakmindness insufficient:* 42 L. R. A. (N. S.), 343; 90 S. W., 1075; 27 S. E., 994; 62 Miss., 440; 122 S. C., 203. *Lack of consideration sets aside satisfaction:* 3 Jones on Mtgs., S. 966–70; 22 S. C., 339; 113 S. C., 390; 87 S. C., 1; 57 S. C., 413; 2 Sp. L., 268; 3 Strob., 552; 1 Rich. L., 80; 16 S. C., 344; 38 S. C., 215. *Cases distinguished:* 107 S. C., 470; 90 S. C., 196.

*Messrs. Benet, Shand & McGowan,* for respondents, cite: *"Undue influence":* 90 S. C., 214; 9 Cyc., 455; 64 S. C., 272; 118 U. S., 127. *Motives not subject of inquiry where capability of determining desires:* 9 A. S. R., 158; 86 S. C., 491; 105 S. E., 329. *"Mental capacity":* 22 Cyc., 1206; 4 Iredel, 443; 36 Ill., 109; 84 Am. Dec., 97; 66 N. W., 1115; 40 A. S. R., 468; 145 Ill., 111; 34 A. S. R., 86; Fed., 51; 13 Cyc., 573; 16 A. & E. Enc. L., 624; 9 Id., 119; 18 Id., 624 (2nd Ed.), Ed., 123; 45 N. H., 428; 52 S. E., 782; 55 Me., 282; 38 W. Va., 168; 60 S. E., 141; 44 N. H., 421; 4 DeS., 520. *Cases distinguished:* 113 S. C., 390; 87 S. C., 1; 57 S. C., 413. *No consideration:* 30 S. C., 467; 24 S. C., 1. *Witnesses:* 106 S. C., 410.

March 8, 1927.

The opinion of the Court was delivered by MR. JUSTICE WATTS.

This is an appeal from a decree of Judge Townsend. We have a concurring finding of fact both by the master and Circuit Judge. This Court has decided in a number of cases that it is incumbent on the appellant to satisfy this Court that the finding of the Circuit Court is against the preponderance of the evidence. In the case at bar, this the appellant has failed to do.

Let the report and decree be reported.

All exceptions are overruled and judgment affirmed.

MESSRS. JUSTICES BLEASE and STABLER, and MR. ACTING ASSOCIATE JUSTICE RAMAGE, concur.

MR. ACTING ASSOCIATE JUSTICE RAMAGE: I concur under the law as it now stands. The Legislature ought to put such weak-minded persons in the same class as adjudged lunatics as regards their contracts.

MR. JUSTICE COTHRAN (dissenting): I think that this Court, in exercising its constitutional prerogative of reviewing upon appeal a decree in equity of a chancellor, both upon the law and the facts, should not be influenced by the concurrent findings of a master and Circuit Judge to any greater extent than the burden which every appellant assumes of showing error in the judgment appealed from. In determining this issue the appellant is entitled to the independent judgment of this Court upon the facts as well as the law, and in my opinion the Constitution is mandatory in this respect.

I think that the evidence, as both the master and the Circuit Judge find, shows the extreme mental weakness of Miss Troy; that the defendants took advantage of this weakness in every transaction between them; that the prices paid for the lots were grossly inadequate; that the evidence of payments is utterly insufficient, as the Circuit Judge holds " suspicious "; and the transactions complained of should be annulled as prayed for.